You may proceed. Good morning, Your Honors. May it please the Court, my name is Brent Blakely and I represent G and G LLC in connection with the Basquiat painting Wine at Babylon. I think our position is pretty well laid out in briefs but I just wanted to address a couple specific points. The first one is the only issue that defendant raised in their motion for summary judgment is that the claims were borrowed by the Italian Statute of Limitations, specifically Section 2496. My client took the position that it was not and on this issue, the facts really aren't disputed, it's just really the interpretation of foreign law. And so I'd like to just address the issue of the California borrowing statute on that. After the Court's ruling. Let me, sorry, good morning. Let me just jump in. You say the facts are not disputed. Let me ask you a couple of questions about that. So who actually had possession of the painting after June of 1999? That's a disputed fact, right? Not in regard to the statute of limitations issue. Well, who had it? Can you tell me who had the painting after the couple broke up? The only evidence we have on that is in 2014 we learned that a gentleman named Kanyo Mizaro, who is Ms. Rusick's former boyfriend, had the painting in his house. Well, you say that but the other side says no, that's not true. That's a hotly disputed case. Let me just finish. So 2014 is hotly disputed. I recall he submitted a declaration saying, I don't know what you're talking about, basically. Ms. Rusick, is that how you say it? Rusick. Ms. Rusick. Ms. Rusick, in the discovery responses that I looked through, consistently said at every turn, I have not had possession of the painting since 1999. So I don't think this is a question of law. I think there's a lot of disputed facts that feed into that question. So tell me why you think this is open and shut on the facts. I'm talking, you're right, Your Honor, there are disputed facts. But I'm talking in regard to the facts regarding the tolling and interruption. But you're jumping the gun. The first thing you have to discuss is when did the cause of action accrue? That's the first question for limitations. So when did the cause of action accrue? And where did it accrue? Under 338C Subjection 2, the cause of action accrues in California when my client first has knowledge of the whereabouts. And it can be constructive knowledge of the whereabouts of the painting. And we acted on that the moment the client found out. Where are the whereabouts of the painting? We believed it was in Florence, Italy. When did your client get that knowledge about the painting being in Florence? 2014. Is that based on the boyfriend statement or the possibility of a boyfriend having it on the wall? Yes, Your Honor. But he denies that. He does. So how can the judge reach on summary judgment any meaningful ruling on questions of law when these basic facts are in dispute? You say he had it. He says I didn't. How do you get to summary judgment from that? Well, regarding the own – well, we sought a debt relief and we filed our own motion for summary judgment. I know that. On declaratory relief. And for declaratory relief, because obviously for 15 years Ms. Ruzick never claimed the painting was hers. She simply said, I don't have it. I don't know where it is. During that time – So the painting disappeared at the time of her divorce from Gorey? When they became separated. The divorce didn't become final until 2015. Okay, so when they were separated, allegedly the painting disappeared. Well, it disappeared. It was in their – they lived together in a house in Rome. When they separated, he was out of the house. And then the painting disappeared at some point. And Ms. Ruzick's – I don't know what happened to it. Well, she claimed – okay. We're going way back to 1999, 2000. She claims he took it when the movers came. He then claims in the divorce proceeding she has it. But certainly by 2006, the divorce decree says you don't get it through the divorce decree. He then at some point tries to file a criminal action against her. And the court says, no, you're out of luck time-wise on the criminal action. Did he ever file a civil petition for return of property in Italy? He tried to in the – Your Honor, the – Well, the answer is yes or no. Did he file, separate from any divorce action, a petition for return of property? Separate from what you said, Your Honor, no. No, okay. He tried it through the divorce. He tried it through the criminal proceeding. He made several demands for the property. He reported it stolen within her pole. He made an insurance claim on it. But he didn't – okay. So – and in making these claims, his belief all that time was that she had it somewhere. He suspected that she took it. She was the obvious one to suspect. So she's the one that he's after. So when you – when you land now in California court, my understanding is that you've stipulated below in the district court that it was a 10-year statute of limitations in Italy. I never stipulated that, Your Honor. You never did? Never, Your Honor. The – it's very clear. And I went back and, you know, when I studied it, I'm like, what are they talking about? Well, that's not how I read the papers, but I'll go back and check. I went back and looked at – basically, in the motion for summary judgment, they argued that the 10-year statute applied in – below. And our position was defendant completely ignores the – and this is in our opposition. Defendant completely ignores the fact that under Italian law, the statute has been told and set forth in the Declaration of Giovanni Gnappi, plaintiff's convergent claim in connection with the theft of the Jean-Michel – I'm not spelling it right – Basquiat painting is not subject to statutory limitations of Italy. That was always our position. We acknowledge that they are claiming that, and we argued why it didn't. And on appeal, we've elaborated on that argument. Did you all discuss with the district court when or how a claim accrues under Italian law? I tried to argue it in the motion, but the answer is no, Your Honor. You didn't have oral argument in this case, right? Did you have oral argument in this case? No. No. You didn't. We ruled in the papers. Right. And much of – some of which were not even translated, right? And we've – I mean, you know – And I – How in the world would you want to dump on a U.S. court a bunch of untranslated Italian documents and then say – I mean, it's like the Sophia Loren test for spaghetti. I hope it sticks. So I'm not quite sure what you expected the district court to do. Well, the reason for that, Your Honor, is – and I actually have the meet and confer letter. In their meet and confer letter, they're arguing that the claim was barred under Florida law, where Ms. Ruzic lives. Right. So it became quite a surprise when we got a motion saying it was barred under Italian law, and then I was put into scramble mode trying to get – But you didn't discuss with the judge when a claim accrues under Italian law. I mean, isn't that an essential fact? I argued that you look to California law to determine the date of accrual, and under 338, that's when you learn of the whereabouts of pay. Well, the 338 says you look at 361 if you're talking about a cause that arises in a foreign country, and yours clearly did. So 338 may come later, but it doesn't come first. So 361 starts off with if a claim is time-barred overseas. So you've got to answer that conditional. Is this claim time-barred? The first essential step is, well, when did it accrue in Italy? And what I hear you saying, and the record suggests to me, you all never actually litigated that question in front of the district judge. That question was not – the judge took the position that it accrued when Gorey believed that Rusick took the painting. Which was 1999. Which was in 2000. Early 2000 or something. Okay. So the judge made that determination based on the submitted papers. Based upon Gorey sending a letter, or his attorney sending a letter saying, hey, get the painting back. You took it. We want it back. Does that make sense? Does that seem like a right outcome to you? No, because I think, like the legislature stated in connection with 338, and a lot of other courts have stated across this country, and, again, I'm not an expert in Italian law by any stretch of the imagination, but with stolen artworks, they don't typically circulate on the open market. They're not easily discoverable. It's hard to get knowledge of their whereabouts. They usually remain in private collections. That's why you have all these rules in the statute that doesn't focus on, in California, that doesn't focus on suspecting who took it, but it focuses on the whereabouts of where the painting is actually located. Because you run into situations that you're forced to file lawsuits, you know, if it was based upon who you suspect to take it, forced to file lawsuits that you can have a situation like here where Ms. Hruska says, I don't know where it is. Well, you did file a lawsuit. Once we learned the whereabouts. No, no, no, no. You filed a criminal complaint. So it's a little disingenuous to stand here and say, well, we couldn't have filed anything until we knew exactly where it was. As I read the papers, and I certainly want you to correct me, because you've been at this a lot longer than I have looking at these, but in the divorce proceeding, you sought the painting's return, correct? I didn't say you. I mean the owner of the painting. They sought the return. And then the question was, well, were you on notice? How would you seek a return of a painting if you didn't know where it was? I suspected she had it. Okay. So you filed a lawsuit. Denied having it. Well, but you filed a paper, and then he filed a criminal complaint that she had it, correct? Correct. And that was dismissed because of the criminal law. Of the statute of limitations. Well, the first reason was because under Italian criminal law, you can't sue your wife for that claim. Right. And they were still technically married. Right. So he couldn't do that, but he did institute a criminal proceeding against her because he thought she had the painting, right? Yes, Your Honor. And so now you're coming here and saying, well, all of that wasn't enough that he thought she had the painting and he went through ten years or more of proceedings in Italy. Your Honor. Now he doesn't think she has the painting, or does he think she has the painting? He thinks that she has, that Mazzaro is holding it for her. I'm sorry? That Mazzaro is holding it for her. And, Your Honor, just so you understand how the statute works under California law, if we suddenly found out that a gallery was, or not even a gallery, just an individual in the United States had the painting. Right. We could sue tomorrow against that individual because you can never transfer title to a stolen work. That was established in the case you're going to hear after this. But right now the only person you've ever sued is her. It's true. And so the question is how does it change that you're suing her now when you actually were suing for the same thing way back starting in 2000? You always thought she had the painting. Well, the difference is we're suing her in the United States. Well, yes. But it's like you want to wipe Italy clean. And all these points you're raising, Your Honor, actually strengthen our argument as to why under Italian law the statute of limitations was told under the doctrines of the system. Was that ever argued or presented to the district court in that way? And a related question is, in my mind, did the district court perform its obligation under Rule 44.1 to independently determine that foreign law and the applicability of any tolling kind of rules that Italian law may have? Honestly, I don't know. I couldn't rule right now whether there was any tolling by all of these actions you took, allegedly took. I would actually call that a softball question because the answer is that was directly before the court, and the court punted. The court basically did everything DeFont Broom of Woolsey said you don't do. We said, look, it is told under the doctrines of suspension and interruption. That is throughout my memo. It's in NAPI's affidavit. He excluded NAPI. He excluded NAPI because it was in the connection. Well, Your Honor, in all that. You say the district court punted. That's not what the district court said. You failed to present any argument or evidence that he could consider admissible on this point. That's at the end of his order. The NAPI declaration, he was entirely unsupported. NAPI is not qualified as an expert in Italian law. He didn't punt. You didn't give him any raw materials to work with. Under 44.1, he punted. This is a pure question of law. You are surely not taking the position that a district court invariably has an obligation under 44.1 to do his or her own independent assessment when a party has failed to provide any admissible materials on the point. Your Honor. Are you taking that position? I'm taking the position that what you're suggesting was rejected by DeFont Broom versus Woolsey. The court does have an independent obligation to get the law right. When counsel falls down and fails to provide any raw materials, that just can't be right. First thing, this wasn't the case. We argued that it was suspended and told. I know you argued that. Let me finish my question. I know you argued that, and the district judge said, no, you didn't. You did not provide me with any usable material on that point, and here are three reasons why. I know you argued it. Nobody is saying you didn't. The district court said, your arguments aren't holding water because they're not based on anything I can take a look at. So, in effect, you gave him nothing to work at. Now, what I hear you saying is, oh, this circuit has ordered district court judges to sua sponte, pick up and resolve Italian law questions when counsel has failed to provide any information about it. That can't be right. Your Honor, first thing we argued, suspension and interruption. I argued that in the brief. That is not an evidentiary issue, and DeFont Broomby-Wolfsey clearly stated that that is not an evidentiary issue, and that is an outmoded way of looking at determining. Well, but I think that what DeFont Broomby-Wolfsey says, and I have some familiarity with the case, is that it's a question of law. It's not a question of fact. It's a question of law. It says it can be decided as a question of law, but how and when you get the foundation for that question of law is not laid out in DeFont Broom, and I think when you have the district judge made the judgment here with what he had and what was available to him as to suspension. So he may be right, he may be wrong, but he made ultimately a judgment in that, and what was presented, as I recall, were, and you've also tried to present some material on appeal, but was basically related to a creditor situation. Nothing was even offered up that says in statute of limitations context we have tolling, and it was only then on appeal that you came up with the notion that, well, this recovery action has no statute of limitations because everybody in the district court was operating on the 10-year statute of limitations. Wouldn't you agree that that was basically what the briefs were arguing about about 10 years and whether it was told? In the court below, that was the thrust of the argument, yes, Your Honor. And so, again, that argument was clearly in front of the court that under the doctrines of suspension and interruption that the statute was told, and that issue is clearly before the court. And it is, there's a long line of Supreme Court and Ninth Circuit precedent that holds it. I can flesh out that issue on appeal. Now, let me ask you this. Just run a hypothetical with me. What if we were to say under the California borrowing statute that you couldn't maintain the action in Italy? Then we would move to California law, correct? No, if it's barred under the law of Italy, that ends the inquiry. Okay. But if it's, which is what the district court said? On the borrowing statute, yes, Your Honor. So if you went the opposite way and you just hypothetically said it wasn't barred, right, then would you move to California law to figure it out? Yes, Your Honor, and that's the intellectually honest approach I took. Okay, so now I'm just wanting to run this through. So if you then move to California law and you look at accrual under California law and you believe that she has the painting, correct? We believe that Mazzaro has the painting. The location, that's whereabouts of the painting is. Well, who are you suing? I'm suing her because he got it somehow. He got it from her. Well, are you suing her for recovery or what are you suing her for? Inversion, which has elements of damages and return of the item. Replevin, which is clearly directed towards return of the item. And declaratory relief declaring that my client is the owner of the painting. And your claim is that all of this has come about since some anonymous tip in Italy about a boyfriend having a painting on a wall. She testified in the case. She was deposed. She doesn't know where it is. No, she saw it. No, what I'm saying is that the woman who saw it was deposed in the case. Right, not the former wife. No, Rusev denies knowing where it is. Right. Okay. Now I have to ask one related question on this. The district court said that you maintained in your pleadings and at summary judgment stage that Mazzaro now owns. He doesn't say possesses. He said owns the painting pursuant to an alleged settlement agreement. So why isn't Mazzaro in this case? Our position was that he possesses it. We don't know if he's holding it for her. But you're saying the district court clearly erred in making that statement? I don't know why he made that. Because our position is that he has it. How he got it, I mean, the obvious conclusion is he got it from her somehow. But this is all disputed fact. I know that's your position, but the other side says absolutely not, this is not true. So how did the district court resolve that short of a trial? I think with the issue of ownership should have been ruled in our favor in the declared terror relief action. But I agree with Your Honor. How could the judge possibly do that in light of the record? Because their own expert admitted that under Italian law, you have to do a public filing for an item of this value to claim that it's a gift. And she never did that. That's my point. At every turn, there's a disputed issue of fact. I just don't understand how you can even say this claim accrued. I think this is an argument that would be appealing to you. I don't even see how anybody could say this claim has accrued when all of these facts are in dispute and when you all never litigated accrual under Italian law. That was never litigated. The court just assumed that it started in 2000. He just held that it accrued there. And you never provided, as I read the briefs, any kind of timeline that would show even if there were suspension, which of each of the items that occurred over that 15-year period counted in the suspension. I didn't see an actual timeline to that effect. We set forth each of the items that would act as an element of suspension in the brief. And claiming that every day of those was a suspension? Under suspension, it would delay it while those proceedings were going on. And interruption, it just starts anew. So each one of those would just start at the time running. So under the doctrines of suspension and interruption, and again it goes to Your Honor's point, with those facts, there is at a minimum a question of fact of whether or not the statute was suspended or interrupted. And again, because I've spent a lot of time researching this issue, looking at Supreme Court precedent, looking at this court's precedent. The issue, whether suspension and interruption, was before the court. And it's a purely legal issue. And under defaunt broom, they make it very clear that the court really has a duty to get the law right. And this is not an issue we fell flat on. It's an issue we raised as a defense. And even though argument would be... Did you provide any statute to the court that basically lays out suspension or interruption? We didn't have the actual statute at that time. But now you do? In the lower court, we do now. I mean, you know, this is what's very frustrating about the case, is coming here asking us to reverse the district court, and it's like a moving target. I mean, you may think the painting is a moving target, but I think the statute of limitations is a moving target in the litigation. Because now you say you do have that statute. I mean, I'll just, you know, the... I'll just cite a Supreme Court case, U.S. National Bank of Oregon versus Independent Insurance Agents of America, which is... And there are other, you know... That goes towards this issue. Belarus versus WACKER. What issue are you talking about now? In other words, it is very common in this court, for as long as the issue is raised below, to have that argument fleshed out and elaborated on on appeal. And that's what we've done. Seems like it should have been fleshed out and elaborated below. Right. Why don't we hear... Let's hear from the other side. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please this Court, Scott Humphreys for a plea, Defendant Rita Rusick. All right. So where's the painting? That's a great question. My client has at all times denied that she ever took the painting, and so we don't know where the painting is. There's this allegation, which is disputed, as Your Honor noted, that this Mazzaro person has it. He denies it. Rusick denies that she's ever given it to him. So the short answer is we don't know where the painting is. So why then has any limitations period accrued? Aren't these facts ultimately not where you want them to be? I mean, I don't see how under either California or Italian law, in the absence of any possession of the painting or anybody's knowledge of the whereabouts, a cause of action has accrued. How has a cause accrued? So, Gorey, stepping back, let's start in 1998 when the painting was found. I know he thinks she has it. And she says, as you just agreed, absolutely not. The fact that he thinks he has it is typically not an accrual. It's certainly not under the discovery rule in California. I don't know about Italian law because you all never litigated it in the district court. So how can you say any limitations period has actually accrued in this case? It seems to me it hasn't. So tell me why I'm wrong. Well, it's helpful to look at the Italian cases as a starting point. So Gorey filed suit in the civil divorce proceeding, so he certainly felt that the claim had accrued and that claim was rejected. No, I read that. Are you talking about the 2006 decision? That was a one-liner saying we will not adjudicate personal property. There was no analysis. There was no discussion of who had what. It was just a one-liner about personal property. I found it to be a non-event. Then if we look at the criminal court decision in 2014, again, he filed criminal proceedings. There was a prosecutor. He then intervened in that action. And the criminal court dismissed that case, both acquitted her, but also found that the statute of limitations would bar the claim. As a criminal matter, sure, but that's not what we're talking about. So you can't bring a criminal complaint. I mean, that's apples and oranges for the civil claim. So my understanding on the California law is that if you look at the part of the law. Now we're in California. Well, this claim is in California, so I'm addressing this lawsuit here. So it is filed in California. So you look at where the claim would have accrued. It was undisputed below that it was accrued in Italy. Now, in determining whether it was accrued in Italy, you said? Correct. Well, how did it accrue? You know, a cause of action arising and accruing are not necessarily the same. How did it accrue for limitations purposes in Italy? What are the facts that say this accrued in Italy for limitation purposes? Well, I don't have Italian law on that in front of me, so I can't answer from an Italian lawyer. Well, that's my point. This question is still open. This is, to me, a vital question that nobody has resolved. Nobody knows whether the claim has actually accrued in Italy or not. You just agree. You don't know either. Okay. Well, not under Italian law. Okay. Those are the purposes of California law where this suit is pending. But you don't get to California under 361. 361 says if it's barred overseas. I mean, you have to look at the overseas limitations period first under 361. There's two responses to that. First is, if we need to, we'd be happy to submit a supplemental briefing on that issue. Oh, no, thank you. You guys are relentless in trying to bring new things. Especially if you're an Italian. But under California law, which is where this claim is pending now, you look at the foreign law of the state where the wrongdoing was alleged to occur. As far as accrual goes, that's governed by California law, which would be governed by 338C2. Let me just jump in because I'm looking at 361. 361 says when a cause of action has arisen in a foreign country and by the laws thereof cannot be maintained by reason of lapse of time. First question is, what happened in Italy? Did a cause of action accrue under Italian law, and did it lapse under Italian law? That's the first question. And it seems to me this is an unanswered question by anybody, district court, you all. And there's nothing in the record that answers that question. Why aren't we sending this back for that key question to be answered? Everything turns off of that line. Did this lapse in Italy? Why aren't we just sending it back for further factual finding? Which, by the way, just seems to me requires a trial, but that's a different issue. But anyway, go ahead. So why aren't we just sending it back? Because it was – well, let me answer in the alternative here, which is that you can affirm the district court not only on the borrowing statute Italian law issue. You can affirm under California law. So there's two bases for the district court's decision. One is the borrowing statute applies under Italian law, tenure statute limitation bars the claim. But there's a second independent basis to affirm, which is what we had just discussed previously. Like even assuming – Correct. Okay. And so if you jump to California law – Correct. Your colleague says then he really wins because they don't know where the painting is, and so he's filing a conversion action. So your response to that under California law is what? So under 338C, it's upon discovery of the whereabouts of the painting. But Gori, who's the predecessor to G&G, said that he knew the whereabouts of the painting. And in a claim for conversion – so there's a difference between conversion and theft. So he claims that the last known place that the painting was was in the marital home and that Rusik converted it. Now, he knew the basis for his claim at that time. This is what the district court found. He then proceeded in Italian court on that basis and even went so far as to file a criminal complaint, which certainly requires a certainty of some magnitude. I don't understand how any of that says this is the whereabouts of the painting. I mean, yes, a husband in a divorce fight said, my wife stole this, but that's neither here nor there in terms of fact. That's just his supposition. I mean, what does that say about the whereabouts of the painting? When you look at our cases, people actually know where the paintings are. Well, I agree. And so what you have here is my client, who's been sued over the course of nearly two decades. For her case, she's denied ever having it. Now, if the painting were to come up. I thought she claimed it was given to her as a gift, anniversary gift, that she actually owned it at one point. That it was a gift to her. Did she claim that? That's correct. And she still claims ownership because it was a gift. She claims ownership, but she doesn't know where it is? Not in possession. Correct. She has legal ownership. She does not have possession. So going back to the question, which is, if the painting were to show up, say Sotheby's 2025, okay, you can bring a claim against Sotheby's. You cannot bring any claim against my client.  Gorey, who's the predecessor. Because she successfully hid it in the painting for all these years? I mean, is that why the claims are done? I mean, it just doesn't make any sense to me that she took the position that she owned the painting and it was a gift, and she's also taking the position that she doesn't know where it is. Well, she claims ownership legally as a gift. It's in the marital home. It disappears. You know, again, I sound like a broken record, and I apologize, but aren't these all for the trier of fact to work out? This is a he said, she said, they said, other people said, I mean, this is just one story after another that somebody has to sort out as a matter of fact. Well, as to the question of whether or not she stole it, absolutely. There's no basis for summary judgment on that. But as to the running of the statute of limitations, it's undisputed that Gorey claimed that she had taken it, that he took legal action against her. And our position, and I understand what you're saying about time loss, under California law, the claim accrued at the time that Gorey had sent a demand letter, subsequently filed suit, proceeded against her in criminal court. So if the statute of limitations was not barred, essentially what you'd be left with is their ability to sue her in perpetuity until this painting appears. Theoretically, they could bring claim after claim after claim, and then one day it may appear Sotheby's. And my claim is maintained that, in fact, it's very likely that Gorey has it all along. Well, the alternative to that, and the reason that it won't happen, is that it can be dismissed as unripe. If it hasn't accrued, the district court has no obligation to hear a non-accrued claim. You just dismiss it. And you say, come back. The limitations period is not going to even start until the claim accrues. You sued too early, and you're not going to come back again and again and again. You come back when the painting surfaces. What's wrong with that? Well, if Your Honor was going to issue an order that the case has to be dismissed and it can't be brought until the actual physical whereabouts of the painting were discovered, I don't think that we would have a problem with that result. Well, I think the difference is, well, there's different causes of action. There's a replevin, which is, give me the thing back, wherever in God's earth it may be, in a basement, on a wall. And then there's the conversion, that she did something to it, and she's responsible for transfer. And that's a different question than give me the painting back. So it may be that the replevin action can be put out into outer space for a while while the painting floats around. But I would assume they would object to dismissal of the conversion action or conduct on her part that may have changed the status. So I don't know what your answer is to that on the statute of limitations. My answer would be that when you're looking at the conversion action, it's not for real or it's not for extangible property. So the whereabouts of the painting are not necessary to cause that action to accrue. It accrues when Gorey accuses her and proceeds criminally and civilly in Italian courts. That he believed that she converted it, therefore that was sometime some years ago beyond any three-year statute of limitations. People sue other people all the time based on their suspicion reasonably held that someone has done some act which has caused them harm. I can't imagine a conversion claim ever being resolved in summary judgment. I mean, it would be a rare day that the case would be so one lopsided that the fact disputes would fall away and you could decide conversion on summary judgment. Well, you're suggesting on statute of limitations not on the case itself, right? That's right. Well, the running of a limitations issue and the tolling of a limitations issue is often a question of fact. Well, it can be a question of fact. It was not here. There was no dispute of fact as to what Gorey had done in Italy. Right, but I think the disputes of fact may center more around the alleged tolling under Italian law because how do we know if Italian law would really bar this claim unless we know what the tolling, what would cause tolling, what would support tolling, whether there was tolling? Well, I don't think that those would be legal issues. I don't know that they would be factual issues. Well, you have to know what the facts are to decide. You have to know both with the facts and the law to decide that. Well, here we have, based on the record, the Italian law is that the tenure statute, statute of limitations, starts to run from the moment that you can exercise the claim. Gorey exercised the claim starting in 2000, and the only statement about tolling was in the Giovanni Nappi Declaration, which the district court found was completely unhelpful. It didn't append, for instance, statutes translated into English that the court could look at or provide on the other basis. So you have in the record that there's a tenure statute of limitations. It runs from the time that Gorey could exercise the right. He did, in fact, exercise that right. So it had run by the time the claim here was brought. So now you have supplemental materials, some of which also seem to be irrelevant and untranslated, but some of which might suggest that the statute would be suspended or tolled under Italian law. Why shouldn't we let the district court figure that out? Well, the primary reason is, and this is in the Heun case that we cited in our brief, is that that argument has been waived. It was not presented to the district court. It is not the opportunity on appeal to present brand-new declarations of Italian law. And by the way, if you look at that Italian declaration, you have what is a persistent problem in this case, which is appended. There's 10 Italian pieces of so-called authority, but they're all in Italian. They're not translated. There's no way. I mean, this is no way to run a railroad in a foreign law case to give untranslated documents to the court because... We can't handle this. We can't handle it. Even if we speak Italian and can read them, we're not supposed to be fact witnesses on translating Italian law. If I can make one point as my time has expired, putting aside all of this Italian law issue, under California law, the claim accrued. The claim would accrue upon learning the whereabouts of the painting. The dispute here is the whereabouts. Now, where are they? Where's the painting? We might not know. So you agree a cause is not accrued under California law? I do not. It accrued when the last known person, when Gorey said that his wife had converted it from the marital home, which is the last known place that it was, that's when that claim would have accrued because at that point Gorey had said that he knew the whereabouts of the painting. But she denies that. Why are we just trusting Gorey? Why is he the be-all and end-all on this fact issue? She says, no, that's absolutely wrong. She gets an equal say. So you need to try her fact to work it out. You know, we don't just roll with Mr. Gorey because he said it. She says, absolutely not, he's lying. He's an angry ex-spouse who's lying. I don't understand why we're just supposed to take Mr. Gorey's statement. Well, in that instance, as you said before, the case would have to be dismissed because there is no knowledge of whereabouts. So it would be an improper case that couldn't even be here at all because they've conceded they don't know the whereabouts either, or that it's with Mr. Mazzaro, which means they don't have a claim for recovery against my client. Okay. Well, was the district court correct that G&G was claiming that Mazzaro owned the painting? I'm sorry, could you ask that? The last sentence of the district court's opinion says that G&G maintained that Mazzaro owns the painting. Was that just a loose bit of language? No, that's correct. So G&G had taken the position below that Ms. Rusick had given the painting to Mr. Mazzaro as a settlement for a lawsuit that had been filed by Mr. Mazzaro. Ms. Rusick disputes that. Mr. Mazzaro disputes that. But that was G&G's position. How could the district court – well, I guess he didn't find that. He just said that G&G took that position. I think he treated it as judicial admission, which was binding on G&G. So if they were taking a position – I didn't see any judicial admission language in the order. It's my understanding of the order. The order speaks for itself. That's my understanding. Thank you. You have one minute for rebuttal. You argued below that the case accrued under California law, Section 338C2, when Gorey first suspected the whereabouts of the painting in 2014. The law is very clear, and the case that we cited is the only California case that really deals with the issue, which I believe is right on point, Society of California Pioneers v. Baker, that it's the whereabouts where he believes the painting is located. They keep on pointing to he suspected she took it. That is not sufficient, and that is clearly the case under California Pioneers and a lot of other jurisdictions that talk about the discovery of the whereabouts of the painting in this type of situation. And also, Your Honors, even today in the briefs here, they have not argued that what I set forth in my briefs, that the doctrines of suspension, interruption, and that recovery actions are not subject to a statute of limitations, is an erroneous interpretation of Italian law. They have not disputed that at all. Thank you. Thank you. Thank both counsel for your arguments this morning. The case of G&G v. Rusick is submitted.
judges: McKeown, Wardlaw, Donato